IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

OSCAR L. PRICE,

    *Plaintiff*,

    v.

                              Civil Action No. ELH-14-1989

GRASONVILLE VOLUNTEER FIRE
DEPARTMENT,

    *Defendant*.

## MEMORANDUM OPINION

Plaintiff Oscar L. Price was a volunteer firefighter for defendant, the Grasonville Volunteer Fire Department (the "Department") in Queen Anne's County, Maryland. *See* ECF 1 at ¶¶ 5, 6 ("Complaint"). He has sued the Department, asserting four claims: employment discrimination on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Count One); a racially hostile work environment, also in violation of Title VII (Count Two); employment discrimination on the basis of race, in violation of the Civil Rights Act of 1991, 42 U.S.C. § 1981 *et seq.* (Count Three); and retaliation, in violation of Title VII (Count Four).[1]

At issue before the Court is defendant's "Preliminary Motion to Dismiss or in [the]

---

[1]Plaintiff attached several exhibits to the Complaint: two black and white photographs, one allegedly from Chief Steve McComb's Facebook page, and one depicting several members of the Department posing in a "stereotypical urban, gang member style" (ECF 1-2); a "Determination" issued by the United States Equal Employment Opportunity Commission (ECF 1-3); and a "Notice of Right to Sue" issued by the United States Equal Employment Opportunity Commission (ECF 1-4).

Alternative Motion to Strike" (ECF 5, "Motion"),[2] which has been fully briefed.[3]  No hearing is

necessary to resolve it.  *See* Local Rule 105.6.  For the reasons that follow, the Motion will be

denied.

### Factual Background[4]

Mr. Price, who is African American, began volunteering with the Department in 1983.

Complaint ¶ 5.  He was the first African American firefighter admitted to the Department, *id.* ¶ 6,

and served as an engineer and a driver.  *Id.*  ¶ 5.  Although the Department did not compensate

Mr. Price directly for his services, he alleges that he was entitled to certain benefits pursuant to

several Maryland statutes, which amount to compensation.  ECF 19 at 3, 8.[5]  In particular, Mr.

---

[2] It does not appear that defendant double-spaced its pleadings.  *See, e.g.*, Motion (ECF 5); Reply (ECF 11).  Local Rule 102.2.b provides that, with respect to all documents submitted to the Court, "[l]ines of text shall be double-spaced except for quotations and footnotes."

[3] In addition to the Motion (ECF 5), I have considered plaintiff's opposition ("Opposition," ECF 10), and defendant's "Second Motion to Strike" (ECF 11).  Notably, in an Order dated August 7, 2014 (ECF 13), I observed that although defendant titled ECF 11 as "Second Motion to Strike," it is listed "on the docket as a reply and, in substance, appears to amount to a response to plaintiff's Opposition, rather than an entirely new motion seeking to strike additional material."  Accordingly, I refer to ECF 11 as defendant's "Reply."  I have also considered plaintiff's Surreply (ECF 19, "Surreply"), filed with leave of Court.  As discussed, *infra*, by Order dated September 8, 2014 (ECF 15), I permitted plaintiff to file the Surreply to respond to the argument that Mr. Price was not the Department's employee, which was raised by the Department for the first time in its Reply.  *See* Reply ¶ 1.

[4] Unless otherwise indicated, the Factual Background is drawn largely from the Complaint.  At this juncture, the court must accept as true all factual allegations contained in the Complaint and must draw all reasonable inferences in favor of Price.  *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted).

[5] As discussed, *infra*, Mr. Price does not state in his Complaint that he received remuneration in exchange for his services as a firefighter.  But, the Court may take judicial notice of several Maryland statutes cited by plaintiff in his Surreply, which enumerate certain benefits to which firefighters in the State of Maryland are entitled.  *See, e.g., Philips v. Pitts County Memorial Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6)

Price claims that, in exchange for his work as a volunteer firefighter, he was entitled to the following: "a generous state-funded disability pension, group life insurance, survivors' benefits for dependents, a scholarship for dependents, tuition reimbursement, workers' compensation, and federal and state income tax credits, deductions, and exemptions." *Id.* at 3.[6]

Mr. Price alleges that, "[a]fter twenty-six years of honorably serving the Department, he became subject to discrimination and harassment by the Department's new President Robert Sharp and new line staff," which included Chief Jason Anthony, Lieutenant Keith Thomas, Matt Coursey, John Werkheiser, and Ray Stokes. ECF 1 at ¶ 6. To illustrate, plaintiff refers to an incident that occurred on December 14, 2009. On that date, plaintiff was unable to attend the Department's annual election meeting, at which Sharp presided, and so he submitted a ballot in a sealed envelope. *Id.* ¶ 7. He asserts, in part, *id.*:

> At the meeting, President Sharp made a spectacle of Mr. Price by throwing Mr. Price's ballot in the trash in front of the entire Department. Dawn Anthony[, another member of the Department,] protested President Sharp's actions and was physically assaulted for her opposition. President Sharp was subsequently found guilty of second degree assault in connection with his attack.

---

dismissal, we may properly take judicial notice of matters of public record."); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989); *see also Bey v. Shapiro Brown & Alt, LLP,* 997 F. Supp. 2d 310, 316 n.4 (D. Md. 2014).

[6] Clearly, Mr. Price omitted important factual allegations from his Complaint. However, based on Maryland statutory law, which is subject to judicial notice, I need not dismiss the Complaint because of these omissions. Because I may consider applicable Maryland statutes in resolving this Motion, this minimizes the significance of the factual omissions. Nevertheless, the Court will grant plaintiff leave to amend to add the allegations he included in ECF 19.

Also, I note that plaintiff appended to his Surreply his own Affidavit, in which he asserts that he is entitled to certain benefits. ECF 19-1. And, plaintiff appended to his Surreply a printed excerpt from an Equal Employment Opportunity Commission Compliance Manual, which discusses the treatment of volunteers. ECF 19-2. I did not take these materials into consideration as they are extraneous to the Complaint. *See U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014).

Ms. Anthony subsequently related to Mr. Price what happened at the meeting. *Id.* ¶ 8. When Mr. Price attempted to address with President Sharp and his command staff the issue of why his vote did not count, Mr. Price was told that his one vote "did not matter." *Id.*

Plaintiff also alleges that in February 2010, Chief Anthony requested that Mr. Price be available on "February 5, 2010 and February 11, 2011"[7] to clear the Department's parking lot during snow storms. *Id.* at ¶ 9. Mr. Price agreed, but he informed Chief Anthony that he would have to rent a tractor in order to remove the snow because his own was broken. *Id.* Chief Anthony told Mr. Price that the Department would "cover the costs associated with the snow removal." *Id.*

In reliance on Chief Anthony's assurances, Mr. Price rented a tractor and cleared the snow. *Id.* at 10. Thereafter, he submitted an invoice to the Department for a total of $1,950, which included the costs of renting the tractor and Mr. Price's thirty-five hours of labor to clear the snow. *Id.* at 10. According to Mr. Price, the Department received funds from FEMA for snow removal, but the Department did not reimburse Mr. Price for the cost of renting the tractor or for his time and labor. *Id.* Mr. Price alleges that President Sharp remarked that the Department "'was not going to pay his black ass.'" *Id.* Nonetheless, according to Mr. Price, the Department paid a Caucasian individual who also removed snow from the Department's parking lot. *Id.*

Shortly after the February snow storms, the harassment against Mr. Price allegedly escalated. Mr. Price contends that his equipment necessary to respond to fires had been moved to the back of the station, "without his knowledge or consent." *Id.* ¶ 11. Also, Caucasian

---

[7] Plaintiff presumably intended to write February 11, 20**10** instead of February 11, 20**11**, because he claims he was "effectively discharged in the Spring of 2010. Complaint at ¶¶ 14-15.

Department officers and line staff began to refer to him as "black son of a bitch" and to command him to "get his black ass on the truck." *Id.*   In particular, Lieutenant Keith Thomas told Mr. Price to "'take [his] black ass and drive' a snow plow." *Id.* ¶ 14.  Mr. Price also alleges that in an effort to "embarrass and mock" him, Caucasian members of the Department would photograph themselves "in stereotypical urban, gang member style." *Id.* ¶ 13.

In the Spring of 2010, Mr. Price filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 14.  Mr. Price alleges that once the Department received notice of the Charge in or around May 2010, Mr. Price's equipment necessary to respond to fires went missing.  *Id.*  He claims that Lieutenant Keith Thomas "bragged to others that 'we took that nigger's gear and put it in a locker and that is where it is going to stay.'"  *Id.*  Without his equipment, Mr. Price was unable to respond to fires.  *Id.* ¶ 15. According to Mr. Price, Chief Anthony also refused to provide a pager to Mr. Price, despite his repeated requests for a new one.  *Id.*  Mr. Price has alleged, *inter alia*, that "[t]he officers and line staff's actions have effectively discharged Mr. Price from membership without affording him any due process."  *Id.* ¶ 15.

According to plaintiff, the EEOC "found cause that Plaintiff was terminated because of his race and was retaliated against for protected activity, i.e., the reporting of the racist comments and seeking protection under Title VII of the Civil Rights Act of 1964."  *Id.* ¶ 17.  Plaintiff attached the EEOC "Determination" as an exhibit to the Complaint.  *See* ECF 1-3.  In his Complaint, Price quotes from the EEOC's determination, Complaint ¶ 17 (emphasis in Complaint):

"Evidence obtained during the Commission's investigation revealed that since at least 2009 and continuing through [Mr. Price's] active membership with [the

Department] in 2010, [Mr. Price] was subjected to racial harassment in the form of offensive race-based comments made by the President and various officers, as well as finding his gear removed from his locker and placed in the back of the fire house.  I find that this ***conduct was severe and pervasive and that because the harassers were supervisors***, [the Department] may be held liable for their conduct."

On or around March 19, 2014, the EEOC mailed plaintiff a Notice of Right to Sue ("Letter").  Complaint ¶ 18; ECF 1-4.  Plaintiff alleges that he received the Letter on or around March 21, 2014.  Complaint ¶ 18.  He filed suit in this Court on June 19, 2014.  *See id.* at 1.  Initially, defendant sought dismissal of plaintiff's claims pursuant to Rule 12(b)(6) on the grounds that the suit was not timely.  *See* Motion ¶ 8-11.  The Department added that Price was never an employee of the Department.  Reply ¶ 1.

Additional facts will be included in the Discussion.

## Discussion

### A.  Standard of Review

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the adequacy of a complaint.  To survive a Rule 12(b)(6) motion, a complaint must satisfy the pleading standard articulated in Fed. R. Civ. P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

To defeat a motion under Rule 12(b)(6), a complaint "must plead facts sufficient to show that [the] claim has substantive plausibility." *Johnson v. City of Shelby, Mis*s., ____ U.S. ____, 135 S. Ct. 346, 347 (2014) (per curiam); *see Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . .") (citation omitted); *Twombly*, 550 U.S. at 570; *see also Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011).

Dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to 'state a claim to relief . . . .'" *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011) (citation omitted).  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citation omitted).

In reviewing a Rule 12(b)(6) motion, a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, ____ U.S. ____, 132 S. Ct. 402 (2011).  The complaint must contain sufficient factual detail to "nudge[ ] [the plaintiff's] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570; *accord Iqbal,* 556 U.S. at 680.  And, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  Nor must it accept legal conclusions couched as

factual allegations, *Iqbal*, 556 U.S. at 678; *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010).

"Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, *see* Fed. R. Civ. P. 8(c), and the burden of establishing the affirmative defense rests on the defendant." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Generally, courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" through a Rule 12(b)(6) motion. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman*, 494 F.3d at 464; *accord Pressley v. Tupperware Long Term Disability Plan*, 533 F.3d 334, 336 (4th Cir. 2009). However, because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies … if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman*, 494 F.3d at 464 (quoting *Richmond*, 4 F.3d at 250) (emphasis added in *Goodman*).

In evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion, a court ordinarily "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger*, 510 F.3d at 450. However, a court may properly consider documents incorporated into the complaint or attached to the motion to dismiss "so long as they

are integral to the complaint and authentic.'" *U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (quoting *Philips v. Pitt Cty Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)); *see Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)); *Sammarco v. Bd. of Educ. of Prince George's Cty.*, Civil No. CCB-13-1079, 2013 WL 5274277, at *1 n. 1 (D. Md. Sept. 16, 2013).  To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).

In the Complaint, plaintiff refers to the Letter notifying him of his right to sue.  *See* Complaint ¶ 18.  He also appended the Letter to the Complaint.  ECF 1-4.  Defendant did not append this document to the Motion, although it forms the basis of defendant's Motion.  Because there is no dispute as to the authenticity of the Letter, and it is seemingly integral to the Complaint and the Motion, I may consider it.[8]

In his Surreply, plaintiff relies on certain Maryland statutes to establish that, in exchange for his volunteer services to the Department, he was entitled to certain benefits that amount to compensation.  Surreply at 8.  "It is well established that '[a court] may properly take judicial notice of matters of public record,' including statutes."  *Oberg, supra*, 745 F.3d at 136 (4th Cir. 2014) (quoting *Philips, supra,* 572 F.3d at 180).  *See* note 5, *supra*; *cf. Clatterbuck, supra,* 708 F.3d at 557-58 (stating that an "ordinance itself and its legislative history [are] 'legislative facts,'

---

[8] As noted in his Surreply (ECF 19), plaintiff refers to his own Affidavit.  I have not considered it, however, based on the principles outlined above.

. . . and are 'not a matter beyond the pleadings but . . . an adjunct to the ordinance which may be considered by the court as a matter of law,' " under "a narrow exception to the principle embodied in Rule 12(d) that allows a court to consider facts and documents subject to judicial notice without converting the motion into one for summary judgment") (citation omitted). Therefore, I will take judicial notice of the Maryland statutes cited in plaintiff's Surreply.

### B. Defendant's Motion to Strike

Plaintiff attached to his Complaint two photographs.  ECF 1-2.  One allegedly depicts members of the Department posing in a "stereotypical urban, gang member style."  Complaint ¶ 13; ECF 1-2.  The other exhibits a black and white photograph of several nude men, who appear to be clinging to a fence.  *See* ECF 1-2.  A handwritten note on the second photograph states: "Asst. Chief Steve McCombs Facebook."  *Id.*

Plaintiff also states in his Complaint:  "Dawn Anthony protested President Sharp's actions and was physically assaulted for her opposition.  President Sharp was subsequently found guilty of second degree assault in connection with his attack."  Complaint ¶ 7.  In his Opposition, plaintiff attached as exhibits a record of Sharp's conviction, *see* ECF 10-2, and an online article by Chris Knauss from the news website *MyEasternShoreMD*, discussing Sharp's conviction.  *See* ECF 10-3.

Pursuant to Fed. R. Civ. P. 12(f), defendant has moved to strike from the Complaint the references to Sharp's assault of Dawn Anthony, as well as the photographic exhibits.  Motion, ECF 5 ¶¶ 14-18.  Defendant argues that the description of President Sharp's conviction and exhibits are "inflammatory, impertinent, and scandalous…."  *Id.* ¶¶ 14, 17.

In response, plaintiff argues that the materials in question "directly relate to Plaintiff's claims of discrimination." Opposition at 5. Moreover, he explains that the assault is already a matter of public record. *Id.* As to his photographic exhibits, plaintiff contends "they are direct evidence of the hostile environment to which the plaintiff was subjected." *Id.*

Rule 12(f) of the Federal Rule of Civil Procedure states, in pertinent part: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Nonetheless, the Fourth Circuit has made clear that Rule 12(f) motions are generally viewed with disfavor "because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1380, 647 (2d ed. 1990)) (internal citations omitted) (noting that a defense that might confuse the issues in the case should be deleted).

The Department's quarrel with the allegations in the Complaint concerning Sharp's conviction for assault is specious. Sharp, the President of the Department, was found guilty of second-degree assault as a result of his interaction with Ms. Anthony. He allegedly assaulted Ms. Anthony because she was defending plaintiff's right to vote, as the only African-American member of the Department. This is central to plaintiff's discrimination claims. Moreover, the assault conviction is a matter of public record.

As to the documentation about Sharp's conviction attached to the Opposition (ECF 10-2; 10-3), such additional materials, which are outside the four corners of the Complaint, may not be considered to resolve a motion to dismiss. As noted, in evaluating the sufficiency of a complaint in connection with a Rule 12(b)(6) motion to dismiss, a court ordinarily "may not consider any

documents that are outside of the complaint, or not expressly incorporated therein " unless they are integral. *Clatterbuck*, *supra*, 708 F.3d at 557. Because these materials are extraneous and not integral to the Complaint, I may not consider them.

The pictorial exhibit, ECF 1-2, graphically represents the racially charged environment in which plaintiff allegedly found himself. Indeed, the photos are direct evidence of the hostile environment to which the plaintiff allegedly was subjected. Therefore, ECF 1-2 is relevant to plaintiff's claims.[9] Moreover, as indicated, documents attached to the Complaint, ECF 1-1 through ECF 1-4, may be considered by the court in connection with a Rule 12(b)(6) Motion. *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, Md., 684 F.3d 462, 467 (4th Cir. 2012) (citation omitted).

### C. Timeliness of Plaintiff's Suit under Title VII

As noted, three of plaintiff's four claims are brought pursuant to Title VII: Count One alleges employment discrimination on the basis of race; Count Two alleges a racially hostile work environment; and Count Four alleges retaliation.

Title VII prohibits employment discrimination on the basis of race and other considerations. Under Title VII, a "person aggrieved" by an alleged unlawful discriminatory employment practice must file a "charge" of discrimination with the EEOC or an appropriate state or local agency within a specified time "after the alleged unlawful employment practice occurred," 42 U.S.C. § 2000e-5(e)(1), and "cannot file suit until [he] has exhausted the administrative process." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013) (citing 42 U.S.C. § 2000e–5(b)); *see Chacko v. Patuxent Inst.*, 429 F.3d 505, 509. (4th Cir.

---

[9] This Memorandum Opinion does not constitute a ruling as to the admissibility of any evidence at trial.

2005).   Upon completion of the administrative process, the EEOC must give notice to the complainant of the complainant's right to file suit.  *See* 42 U.S.C. § 2000e-5(f)(1).  This notice is commonly called a "right-to-sue letter."  *See, e.g.*, *Laber v. Harvey*, 438 F.3d 404, 416 (4th Cir. 2006).   Upon receipt of the right to sue notice, a complainant has ninety days to file suit in federal or state court.  *See* 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. § 1601.28.

The EEOC Letter to Mr. Price, notifying him of his right to sue the Department on the basis of his Title VII claims, is dated March 19, 2014.  Complaint ¶ 18; ECF 1-4.  Plaintiff allegedly received the Letter on or around March 21, 2014.  *Id.*  He filed suit in this Court on June 19, 2014, ninety-two (92) days after the date of the Letter and ninety (90) days after he claims the Letter was received.  *See id.*

In seeking dismissal, defendant argues that plaintiff's claims are time-barred because plaintiff failed to file his civil suit within ninety days of when the right-to-sue letter was sent to plaintiff.  ECF 5 ¶ 10.  According to defendant, plaintiff's suit was initiated ninety-two days after the issuance and mailing of the letter, exclusive of the date of issuance, and thus it was not timely.  *Id.*[10]

The ninety-day time limit is not a jurisdictional requirement.  *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 & n.2 (4th Cir. 2009); *Prelich v. Med. Resources, Inc.*, 813 F. Supp. 2d 654, 662-63 (D. Md. 2011).  Instead, the time limit is treated "'like a statute of limitations.'"  *Chacko*, 429 F.3d at 513 n.5

---

[10] The argument that Mr. Price failed to file a civil suit within ninety days of when the Letter was sent does not apply to plaintiff's § 1981 claim because the EEOC does not enforce § 1981.  *See* 42 U.S.C. § 2000e-4 (2006); *Workplace Laws Not Enforced by the EEOC*, U.S. Equal Emp. Opportunity Commission, http:// www.eeoc.gov/laws/other.cfm (last visited Dec. 4, 2014) (providing a list of federal employment laws not enforced by the EEOC).

(quoting *Zipes*, 455 U.S. at 393).   Nevertheless, the ninety-day limit is strictly enforced.  *See Harvey v. City of New Bern Police Dept.*, 813 F.2d 652 (4th Cir. 1987) (affirming dismissal of complaint alleging employment discrimination filed one day late).

In the absence of evidence of the date of receipt of a right-to-sue letter, a right-to-sue letter is presumed to be sent the day it was issued and presumed to have been received three days after it was issued and mailed, pursuant to Fed. R. Civ. P. 6(d).  *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984) (applying presumption that notice is received three days after issuance, and citing former Fed. R. Civ. P. 6(e)); *see also Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 526 (2d Cir. 1996) ("[N]ormally it may be assumed, in the absence of challenge, that a notice provided by a government agency has been mailed on the date shown on the notice.") (citing *Baldwin*, 466 U.S. at 148 n.1).   These presumptions "are convenient and reasonable in the absence of evidence to the contrary," but they are not "irrebuttable."  *Sherlock*, 84 F.3d at 526.

Moreover, the Fourth Circuit does not adhere to an "actual notice" rule.   Rather, a plaintiff is deemed to have received notice when the right-to-sue letter is received by a member of the plaintiff's household of suitable age and discretion, *see Harvey v. City of New Bern Police Dept.,* 813 F.2d 652, 654 (4th Cir. 1987), or "when the Postal Service delivers notice to a plaintiff that the right-to-sue letter is available for pickup," even if the plaintiff does not actually take possession of the letter until a later date. *Watts–Means v. Prince George's Family Crisis Ctr.,* 7 F.3d 40, 42 (4th Cir. 1993).

In this case, plaintiff's Letter is dated March 19, 2014.   Complaint ¶ 18; Letter at 1. Plaintiff alleges he received it on or about March 21, 2014.  *Id.*  This is consistent with the three-

day presumption established by Fed. R. Civ. P. 6(d).  *See* Opposition at 10.  As noted, plaintiff filed suit on June 19, 2014.

Defendant erroneously calculates ninety days from the date the Letter was sent, March 19, 2014, and not from the date it was received, March 21, 2014.  As indicated, a complainant has ninety days to file suit in federal or state court *upon receipt of the right-to-sue letter*. Contrary to defendant's assertion, the ninety-day period commences upon receipt of the notice. 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. § 1601.28.  In fact, plaintiff's Letter explicitly stated that plaintiff must file a complaint "within ninety (90) days of the date [he] receive[d] the letter."  *See* Letter.

In his Motion, defendant quotes this very language.  Motion ¶ 8.  As plaintiff points out, "[n]inety days from the date of receipt (March 21, 2014) is June 20, 2014."  Opposition at 2. Thus, at least for purposes of the Motion, the Complaint was timely filed on June 19, 2014.[11]

### D.  Employment Status

In seeking dismissal, defendant suggests that plaintiff cannot recover for his claims because he is not an employee of the Department.  In particular, defendant states:  "The within action has been styled an action for discrimination whereby the plaintiff Oscar Price claims that he 'worked' for the defendant (Volunteer Fire Company with no employees)."  Reply ¶ 1.  In the Reply, defendant offers no further argument or citations to authority in support of this position.

---

[11]  Defendant did not make clear whether he argues untimeliness as to Count III, racial discrimination in violation of § 1981.  He states: "[P]laintiff's rights to bring the within action are barred and accordingly, the action should be dismissed."  Motion ¶ 10.  As indicated, the 90-day rule does not apply to the claim under § 1981 because the EEOC does not enforce § 1981 claims.  *See* 42 U.S.C. § 2000e-4.  Indeed, § 1981 is governed by its own four-year statute of limitations, which begins to run once the discrimination has occurred.  *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-83 (2004).

*See id.*  But, the basis for its argument appears to be that plaintiff received no compensation from the Department.   In defendant's Response to Plaintiff's Motion for Leave to File Surreply, ECF 18, it states "plaintiff need only to have produced a W2 or 1099 . . . to support the assertion by the plaintiff that he was an employee." ECF 18, ¶ 4.

Before reaching the merits of this argument, I first address whether I can consider it, given that defendant raised the issue of plaintiff's employment status for the first time in its Reply, filed on July 25, 2014.  *Id.* at ¶ 1.  The Fourth Circuit has stated:  "It is a well settled rule that contentions not raised in the argument section of the opening brief are abandoned." *United States v. Al-Hamdi*, 356 F.3d 564, 571 n. 8 (4th Cir. 2004) (declining to consider argument first raised in reply brief); *see also United States v. Williams*, 445 F.3d 724, 736 n. 6 (4th Cir. 2006) (declining to consider an argument raised for the first time in the reply brief); *Hanlin-Cooney v. Frederick Cnty., Md.*, 2014 WL 576373, at *11 n. 32 (D. Md. Feb. 11, 2014) (declining to consider an argument first raised in reply brief).  The rationale behind this general principle is that that the opposing party would be prejudiced by a consideration of the argument absent an opportunity to respond.  *See Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 735 (D. Md. 2006) (citing *United States v. Head,* 340 F.3d 628, 630 n. 4 (8th Cir. 2003)).

Here, concern about plaintiff's inability to respond is not an issue.  Upon his request, plaintiff was granted leave to file a surreply for this explicit purpose—to address the argument that he is not an employee, raised for the first time in defendant's Reply.  *See* ECF 15.  As explained by Judge Quarles, such "[s]urreplies may be permitted 'when the moving party would be [otherwise] unable to contest matters presented to the court for the first time in the opposing

party's reply.'"  *Fluxo-Cane Overseas Ltd. v. E.D. & F. Man Sugar Inc.*, 599 F. Supp. 2d 639, 647 (D. Md. 2009) (quoting *Khoury v. Meserve,* 268 F. Supp. 2d 600, 605 (D. Md. 2003)).

Moreover, use of the court's authority to decline consideration of an argument raised for the first time in a reply is discretionary.  "Courts are not precluded from considering such issues in appropriate circumstances."  *Clawson*, 451 F. Supp. 2d at 734 (citations omitted); *see Prowess, Inc. v. RaySearch Labs. AB*, 2013 WL 1976077, at *1 (D. Md. May 9, 2013) (quoting *Clawson*, 451 F. Supp. at 734).  In view of the foregoing, I will evaluate the argument.

As noted, defendant argues that plaintiff cannot recover for employment discrimination because he was a volunteer, not an employee of the Department.  *See* Reply ¶ 1.  Defendant asserts that Title VII only protects "employees" against discrimination, and suggests that because plaintiff did not receive any monetary compensation for his services, he was not an employee under the statute.  *See* ECF 18, ¶ 4-5; *see Garrett v. Phillips Mills, Inc.,* 721 F.2d 979, 981 (4th Cir.1983) (citations omitted) (concluding that Title VII's use of the word individual refers to an employee).

In considering what precisely constitutes an employee, the language of Title VII provides little guidance.  Title VII states:  "It shall be an unlawful employment practice for an employer to fail or refuse to hire  . . .any individual . . . because of such individual's . . . race."  42 U.S.C. § 2000e–2(a)(1).  The statute defines an "employer" as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. . . ."  § 2000e(b).  In turn, an "employee" is defined as "an individual employed by an employer."  § 2000e(f).

The Fourth Circuit has adopted a two-part test to determine whether an individual is an employee in a discrimination case. *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 219-221 (4th Cir. 1993); *see Stewart v. Morgan State Univ.*, 2014 WL 4385744, at *3 (D. Md. Sept. 3, 2014). First, the employee must establish the existence of an employment relationship. *Bender v. Suburban Hosp.,* 998 F. Supp. 631, 634 (D. Md. 1998) (noting that it is "axiomatic that a plaintiff must allege the existence of an employment relationship in order to state a Title VII claim."). In particular, the individual must show that in exchange for the service provided to the employer, the individual received compensation. *Haavistola*, 6 F.3d at 221-22; *Graves v. Women's Prof'l Rodeo Ass'n, Inc.,* 907 F.2d 71, 73 (8th Cir. 1990) ("Central to the meaning of [employee] is the idea of compensation in exchange for services: an employer is someone who pays, directly or indirectly, wages or a salary or other compensation to the person who provides services-that person being the employee.").

Once the threshold issue of remuneration is established, the inquiry shifts to "analyzing the facts of each employment relationship under a standard that incorporates both the common law test derived from principles of agency and the so-called 'economic realities' test." [12] *Haavistola, supra*, 6 F.3d at 219-220 (quoting *Garrett, supra,* 721 F.2d at 981). "[U]nder the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished." *Cmty. for Creative Non–Violence v. Reid,* 490 U.S. 730, 751. Once control is established, in the final step, the court assesses the "economic

---

[12] Defendant has not argued that plaintiff has failed to allege employment under the common-law agency or economic realities prongs. As noted, the focus of its challenge seems to be that plaintiff received no monetary compensation. *See* ECF 18, ¶ 4 (requesting that plaintiff produce tax forms to prove employment status). As a result, I only address the question of the adequacy of plaintiff's remuneration and do not reach the last two prongs of the inquiry.

realities." *Haavistola*, 6. F.3d at 220.  Simply stated, "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Id.* (*quoting Bartels v. Birmingham,* 332 U.S. 126, 130 (1947)).

*Haavistola v. Ctny Fire Co.*, *supra*, 6. F.3d 211 (4th Cir. 1993), is the leading Fourth Circuit case on the question of whether a volunteer may qualify as an employee under Title VII. The case presented the question of whether a volunteer member of a fire fighting company in Maryland, who received no direct compensation, was an employee covered under Title VII as well as the ADEA.  *Id.* at 220-221.  As a volunteer, the plaintiff did not receive a salary but did receive benefits pursuant to certain Maryland statutes, including a state-funded disability pension; survivors' benefits for dependents; scholarships for dependents upon disability or death; bestowal of a state flag to the family upon death in the line of duty; benefits under the Federal Public Safety Officers' Benefits Act when on duty; group life insurance; tuition reimbursement; coverage under Maryland's Workers Compensation Act; tax-exemptions for unreimbursed travel expenses; ability to purchase, without paying extra fees, a special commemorative registration plate; and access to certification as a paramedic.  *Id.* at 221.

The district court held the benefits received by the plaintiff were insufficient to make her an employee.  *Id.*  On appeal, the Fourth Circuit reversed, concluding that the district court had made an impermissible finding of fact.  *Id.* at 221-22.  The *Haavistola* Court explained, *id.*:

> Because compensation is not defined by statute or case law, . . . it cannot be
> defined as a matter of law. The district court must leave to a factfinder the
> ultimate conclusion whether the benefits represent indirect but significant
> remuneration as [the plaintiff] contends or inconsequential incidents of an
> otherwise gratuitous relationship as the [defendant] argues.

Thus, the Fourth Circuit determined that whether certain remuneration could convert a volunteer into an employee is a question of fact. *Id.; see Stewart v. Morgan State Univ.*, 2014 WL 4385744, at *4 (D. Md. Sept. 3, 2014) (denying summary judgment because the employment status of an intern based on the extent of compensation was an issue of fact, and evidence that plaintiff was not on state payroll did not disqualify him from status of employee); *German v. Akal Sec., Inc.*, 2011 WL 5974619, at *8 (D. Md. Nov. 29, 2011) (holding issue of whether security guard was an employee of government agency under Title VII was a question of fact).

A similar issue was addressed by Judge Titus in *Evans v. Wilkinson*, 609 F. Supp. 2d 489 (D. Md. 2009). He considered, on summary judgment, whether a volunteer paramedic and emergency medical technician of the Park Volunteer Rescue Squad was an employee. *Id.* at 492-497. In exchange for their service, volunteers of the Park Volunteer Rescue Squad received potential enrollment in: (1) a length of service program, which provided volunteers who had, among other things, completed at least 20 years of "certified active volunteer service," with monthly payments for life; (2) a first-time homeowner's assistance program, through which eligible volunteers were given up to $12,500 toward the purchase of their first home; and (3) a scholarship program, whereby Volunteer Rescue Squad volunteers who satisfied the length of service program requirements were eligible to apply for—but not guaranteed—a scholarship. *Id.* at 494-96.

Judge Titus found *Haavistola* was factually distinguishable from *Evans* based on the nature of benefits received by the plaintiff. *Id.* at 496-97. In evaluating whether these benefits transformed the plaintiff from a volunteer to an employee, Judge Titus noted that the plaintiff

was not paid a salary, she did not receive annual leave, medical benefits, or a retirement plan; and she was not covered by a workers' compensation insurance policy.  *Id.* at 497.  Moreover, Judge Titus found it significant that the benefits available were not guaranteed.  *Id.* at 495. Plaintiff would have to render at least twenty years of service to become eligible for the length of service benefits or the scholarship programs.  *Id.*  And, prior to her termination, she had only served four years.  *Id.* at 490-91.  Given that the benefits were predicated on such an "attenuated temporal nexus," *id.* at 495,  Judge Titus concluded they did not constitute the sort of guaranteed remuneration contemplated by *Haavistola*.  *Id.* at 496-97.

In contrast, in *Finkle v. Howard Cnty. Md.*, 12 F. Supp. 3d 780, 784-86 (D. Md. 2014), Judge Bredar ruled a volunteer auxiliary police officer was an employee for purposes of Title VII.  In *Finkle*, plaintiff received numerous "line-of duty" or "insurance-type" benefits.  *Id.* at 785-86.  In denying defendant's motion to dismiss, Judge Bredar said:  "At first blush it may seem that a volunteer, i.e. one who does not receive wages or a salary, is not in an employment relationship."  *Id.* at 784.  However, he found indirect but significant remuneration sufficient to transform a volunteer to an employee.  *Id.* at 786.  The benefits at issue were consistent with the benefits received by the plaintiff in *Haavistola* and, according to Judge Bredar, constituted substantial enough remuneration to render the volunteer an employee under Title VII.  *Id.* at 785-86.

In the course of his analysis, Judge Bredar conceded that other courts in other circuits have held that "line-of duty benefits" are not guaranteed forms of remuneration.  *Id.* at 786 (citing *Holder v. Town of Bristol,* 2009 WL 3004552, at *5 (N.D. Ind. Sept. 17, 2009); *Scott v. City of Minco,* 393 F. Supp. 2d 1180, 1190 (W.D. Okla. 2005)).  Nonetheless, he explained that

because of the Fourth Circuit's decision in *Haavistola*, he could not find, "as a matter of law, that the 'significant remuneration benefits available upon injury or death' Plaintiff would have received . . . are insufficient to bring her under the ambit of Title VII." *Id.* at 786 (quoting *Haavistola,* 6 F.3d at 222).

Turning to the case at bar, I have noted that, in his Complaint, Price failed to allege any facts suggesting that he received any remuneration sufficient to render him an employee under the protection of Title VII. However, in his Surreply, relying on various Maryland statutes, he contends he is entitled to and received certain benefits in exchange for his service as a firefighter, and these benefits render him an employee under the ambit of Title VII. Surreply at 8 (citing to Md. Code (2003 Repl. Vol., 2010 Supp.), §§ 7-202-7-205 of the Public Safety Article ("P.S"); Md. Code (2008 Repl. Vol., 2010 Supp.), § 18-603 of the Education II Article ("Edu."); Md. Code (2008 Repl Vol., 2010 Supp.), § 9-234 of the Labor and Employment Article ("L.E."); Md. Code (2010 Repl. Vol., 2011 Supp.), §§ 10-207-10-208 of the Tax-General Article ("T.G."); Md. Code (2009 Repl Vol., 2010 Supp.), § 13-618 of the Transportation Article ("Trans."). As indicated, I will take judicial notice of these statutes.[13]

As Price indicates, Surreply at 8, under Maryland law, he is entitled to receive certain remuneration in exchange for his service as a firefighter, including disability benefits, *see* P.S. § 7-202; survivor benefits, *see* P.S. § 7-203; scholarships for dependents upon disability or death, *see* P.S. § 7-204; certain federal benefits under the Federal Public Safety Officers' Benefits Act, *see* P.S. § 7-205; tuition reimbursement for courses in fire service technology, *see* Edu. § 18-603; workers compensation, *see* L.E. § 9-234;  tax exemptions, *see* T.G. § 10-207-10-208; and the

---

[13] Plaintiff did not include the applicable year of the Code Volumes.

ability to purchase a commemorative license registration plate for a private vehicle without paying certain fees, *see* Transp. § 13-618.

This package of benefits is largely comprised of "line-of-duty" benefits available upon injury or death and is comparable to the ones at issue in *Haavistola*.  In *Haavistola*, as discussed, plaintiff, who was also a volunteer firefighter in Maryland, was entitled to a disability pension, survivors' benefits, scholarships for dependents, tuition reimbursement, workers' compensation benefits, and tax-exemptions for work-related travel.  *Haavistola, supra*, 6 F.3d at 221.  Given the factual parallels with *Haavistola*, I cannot say, as a matter of law, that Mr. Price was not an employee of the Department for purposes of Title VII.

In my view, plaintiff has alleged facts, coupled with Maryland law, that are sufficient to state plausible claims under Title VII on the basis of his employment status.  However, the court will grant leave to plaintiff to amend and clarify the Complaint, for the reasons previously stated.

### Conclusion

For the foregoing reasons, defendant's Motion (ECF 5) is denied.  An Order follows.


Date:   December 29, 2014                          _____/s/_____
                                                                    Ellen Lipton Hollander
                                                                    United States District Judge