IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

OSCAR PRICE
    *Plaintiff*,

    v.

                                   Civil Action No. ELH-14-1989

GRASONVILLE VOLUNTEER FIRE
DEPARTMENT
    *Defendant*.

## MEMORANDUM

Plaintiff Oscar L. Price has sued the Grasonville Volunteer Fire Department (the "Department" or "GVFD"), defendant, asserting four claims: employment discrimination on the basis of race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Count One); a racially hostile work environment, also in violation of Title VII (Count Two); employment discrimination on the basis of race, in violation of the Civil Rights Act of 1991, 42 U.S.C. § 1981 *et seq.* (Count Three); and retaliation, in violation of Title VII (Count Four). *See* ECF 22 ("Amended Complaint"). Trial is scheduled to begin on January 9, 2017. *See* ECF 76.

In anticipation of trial, the Department has filed an "Omnibus Motion in Limine" (ECF 88), supported by a memorandum (ECF 88-1) (collectively, the "Motion") and several exhibits. *See* ECF 88-3 to ECF 88-10. Price opposes the Motion (ECF 90, "Opposition") and has submitted several lengthy exhibits. ECF 90-1 to ECF 90-5. No reply has been filed, and the time to do so has expired. *See* Local Rule 105.2(a).

A hearing is not necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons stated below, I shall grant the Motion in part and deny the Motion in part.

## I.   The Framework

A motion *in limine* is a request for guidance by the court regarding an evidentiary question." *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), *aff'd*, 469 U.S. 38 (1984). Motions in limine help to streamline a case, because such motions "enable[] a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial.'" *INSLAW, Inc. v. United States*, 35 Fed. Cl. 295, 303 (1996) (citation omitted); *see Adams v. NVR Homes, Inc.*, 141 F. Supp. 2d 554, 558 (D. Md. 2001). However, such rulings are preliminary, made in the discretion of the court, to assist counsel in preparation for trial. *Luce*, 713 F.2d at 1239-40. When the evidence is actually offered at trial, the trial court may change its ruling. *Id.* at 1239.

A motion in limine must be considered in light of the contentions asserted by the parties. I turn to review the claims alleged by plaintiff.

Plaintiff has filed suit under Title VII, which prohibits an employer from, *inter alia*, discriminating against "any individual with respect to his compensation terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). *See Freeman v. Dal-Tile*, 750 F.3d 413, 420 (4th Cir. 2014). The statutory language makes clear that Title VII prohibits only certain kinds of employment actions, and only actions taken against an employee on a prohibited basis. *See* 42 U.S.C. §§ 2000-e2(a).

First, "the existence of some adverse employment action is required." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). An "adverse employment action" is one that "'constitutes a significant change in employment status, such as hiring, firing, failing to

promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  Second, the intentional discrimination must be on the basis of the plaintiff's "race, color, religion, sex, or national origin." *See* 42 U.S.C. §§ 2000-e2(a)(1).

Single acts that may not be cognizable as adverse actions on their own may, over time, cumulatively amount to an unlawful employment practice by creating a hostile work environment. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *see also Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Hoyle*, 650 F.3d at 333-34.  Plaintiff advances such a claim.

"A hostile environment exists '[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Boyer-Liberto v. Fontainbleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (quoting *Harris*, 510 U.S. at 21 (alterations in *Boyer-Liberto*)).  To show that a hostile work environment was created on the basis of race, a plaintiff must establish that the offending conduct (1) was unwelcome, (2) was based on race, (3) was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment, and (4) was imputable to the employer." *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011).

Plaintiff also alleges a retaliation claim under Title VII.  Title VII prohibits an employer from "discriminat[ing] against any of [its] employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a).  In *Coleman v. Maryland Court of Appeals*,

626 F.3d 187 (4th Cir. 2010), *aff'd,* ____ U.S. ____, 132 S. Ct. 1327 (2012), the Fourth Circuit stated, 626 F.3d at 190.  "The elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action."  In actuality, however, a "materially adverse action," rather than an "adverse employment action," is "the proper articulation of the adversity element in retaliation claims."  *Hinton v. Virginia Union Univ.*, ____ F. Supp. 3d ____, 2016 WL 2621967, at \*13 (E. D. Va. May 5, 2016). *See also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006); *Jensen-Graf v. Chesapeake Employers' Ins. Co.*, 616 Fed. App'x. 596, 598 (4th Cir. 2015) (per curiam); *Mascone v. Am. Physical Soc'y, Inc.*, 404 Fed. App'x. 762, 765 (4th Cir. 2010) (per curiam); *Buckley v. Mukasey*, 538 F.3d 306, 315 (4th Cir. 2008).

Notably, the "materially adverse action" standard is "less restrictive" than the "adverse employment action" standard applicable to discrimination claims.  *Hinton*, 2016 WL 2621967, at \*13 (citing *White*, 548 U.S. at 62).  In the discrimination context, an "adverse employment action" must "affect employment or alter the conditions of the workplace."  But, a materially adverse action" in the retaliation context "need not impact conditions in the workplace to be actionable."  *Hinton*, 2016 WL 2621967, at \*13; *see White*, 548 U.S. at 64-67.

In *White*, the Court stated: "The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."  *Id.* at 67.  Further, the Court explained, *id.* at 63:  "An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace."

Therefore, under *White*, effect on terms or conditions of employment is no longer necessary to establish a retaliation claim. *Id.* at 63-67.[1]

As noted, plaintiff has also sued under 42 U.S.C. § 1981.   In relevant part, § 1981(a) provides: "All persons within the Jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." Section 1981(b) states: "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

Like Title VII, 42 U.S.C. § 1981 prohibits, *inter alia,* "discrimination in employment on the basis of race." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551–52 (4th Cir. 2006); *see Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459–60 (1975) ("§ 1981 affords a federal remedy against discrimination in private employment on the basis of race").   Section 1981(b) was enacted as part of the Civil Rights Act of 1991 in order to overrule legislatively the

---

[1] In *White*, 548 U.S. 53, the Supreme Court concluded that the "adverse employment action" standard for discrimination suits does not apply in retaliation suits.  It said, 548 U.S. at 68 (internal citations omitted; emphasis in *White*):

> [A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination'". . . .
>
> We speak of *material* adversity because we believe it is important to separate significant from trivial harms . . . . The antiretaliation provision seeks to prevent employer interference with "unfettered access" to Title VII's remedial mechanisms . . . . It does so by prohibiting employer actions that are likely "to deter victims of discrimination from complaining to the EEOC," the courts, and their employers. . . .  And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence . . . .
>
> We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective.

Supreme Court's holding in *Patterson v. McLean Credit Union,* 491 U.S. 164 (1989), to the effect that § 1981 applied "only to the formation of a contract" and not "to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions." *Id.* at 176–77. *See generally CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 449–51 (2008) (discussing post-*Patterson* enactment of § 1981(b)).

The framework for proof of claims of employment discrimination under § 1981 is the same as the framework applicable to a Title VII claim. *See Love–Lane v. Martin,* 355 F.3d 766, 786 (4th Cir. 2004) (stating, in case involving employment discrimination claim under Title VII, § 1981, and § 1983, that "the elements required to establish such a case are the same under all three statutes") (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n. 1 (1993)). In particular, discrimination may be proven by one of two methods: (1) "'direct or indirect'" evidence of discrimination, under "'ordinary principles of proof,'" *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (citation omitted); or (2) the burden-shifting approach articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See, e.g., Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 263 n.* (4th Cir. 2008) ("[T]he *McDonnell Douglas* framework applies to discrimination claims under . . . § 1981."); *Love–Lane,* 355 F.3d at 786 (stating that "the *McDonnell Douglas* framework, developed for Title VII, has been used to evaluate race discrimination claims under the three statutes," *i.e.,* Title VII, § 1981, and § 1983); *Gairola v. Com. of Va. Dept. of Gen'l Servs.*, 753 F.2d 1281, 1285–86 (4th Cir. 1985).

"Procedurally, however, Section 1981 claims are not subject to the same exhaustion and timeliness requirements as those asserted pursuant to Title VII." *Sewell v. Strayer Univ.*, 956 F.

Supp. 2d 658, 673 (D. Md. 2013) (citing *White v. BFI Waste Servs., LLC,* 375 F.3d 288, 291-92 (4th Cir. 2004)); *cf. Johnson,* 421 U.S. at 460, stating that "the filing of a Title VII charge and resort to Title VII's administrative machinery are not prerequisites for the institution of a § 1981 action."). Accordingly, a plaintiff's claims for employment discrimination under § 1981 are not limited to factual allegations that the plaintiff exhausted through the EEOC's administrative process. "The timeliness of Section 1981 claims is instead governed either by state law (as to allegations of misconduct during the formation of an employment contract) or by the four-year statute of limitations established by 28 U.S.C. § 1658 (as to allegations of misconduct after the formation of the employment relationship)." *Sewell,* 956 F. Supp. 2d at 673.

Several rules of evidence are important to the Court's analysis of the Motion. Under Rule 402 of the Federal Rules of Evidence, "[r]elevant evidence is admissible" unless rendered inadmissible pursuant to some other legal provision, but "[i]rrelevant evidence is not admissible." Notably, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Of course, under Rule 403, even if the evidence is relevant, the court "may exclude [it] if its probative value is substantially outweighed by a danger of . . . unfair prejudice," or would confuse the issues, mislead the jury, cause undue delay, waste time, or "needlessly" involve "presenting cumulative evidence."

With this background, I turn to the parties' contentions.

## II.      Discussion

### A.  The EEOC Determination of September 18, 2013

The Department seeks to exclude "[a]ny evidence regarding the EEOC's September 18, 2013 Determination issued with regard to Oscar Price[.]" ECF 88, ¶ 1. The Department seeks to

exclude the evidence on the basis of prejudice, as well as lack of probative value in a trial *de novo*. *See* ECF 88-1 at 2-4.

The EEOC determined that Mr. Price was "subjected to racial harassment in the form of offensive race-based comments made by the President and various officers, as well as finding his gear removed from his locker and placed in the back of the fire house." ECF 88-3. It concluded that "this conduct was severe and pervasive and that because the harassers were supervisors, [the Department] may be held liable for their conduct." *Id.*

Fed. R. Evid. 803(8)(A)(iii) contains an exception to the hearsay rule as to "factual findings from a legally authorized investigation." Moreover, in *Chandler v. Roudebush*, 425 U.S. 840, 864, n. 39 (1976), the Supreme Court recognized that "administrative findings with respect to an employment discrimination claim may . . . be admitted as evidence at federal-sector trial de novo."

The defense relies, *inter alia*, on *Goldberg v. B. Green & Co.*, 836 F.2d 845 (4th Cir. 1988), an age discrimination case. There, the trial court (Motz, J.) granted summary judgment in favor of the employer. At the time the court granted summary judgment, it had not yet ruled on the admissibility of the EEOC's findings in favor of plaintiff. *Id.* at 848. Therefore, for purposes of the appeal, the Fourth Circuit assumed that the agency's findings would be admissible at trial. *Id.* Nonetheless, in its review of the summary judgment ruling, the Fourth Circuit found that the EEOC's report was not "probative," because the EEOC "merely repeat[ed] facts which [the plaintiff] himself alleges . . . and then state[d] in conclusory fashion that those facts reflect age discrimination." *Id.* The Court also said in a footnote, *id.* n. 4: "While the admission of [an EEOC determination] is within the discretion of the district court, *see Cox v. Babcock and Wilcox Co.*, 471 F.2d 13, 15 (4th Cir. 1972) (relying on *Smith v. Universal Services, Inc.*, 454

F.2d 154, 160 (5th Cir.1972) (Dyer, J., dissenting)), such findings may be more prejudicial than probative. *Smith*, 454 F.2d at 160–61 (Dyer, J., dissenting)."

The EEOC Determination addresses the precise issues that are for the jury's consideration.  An EEOC determination "comes with the imprimatur of government approval," and therefore "a jury could readily give the EEOC's conclusions greater weight than they should otherwise be accorded, thus usurping the role of the jury as a factfinder." *Roberts v. Wal-Mart Stores, Inc.*, 95-0059-H, 1997 WL 38138, at *2 (W.D. Va. Jan. 28, 1997); *see also Rhinehart v. City of Gastonia*, 3:07-CV-541DCK, 2010 WL 1926444, at *1 (W.D.N.C. May 11, 2010) (concluding "that the presentation of the EEOC findings in this case is of questionable probative value and more likely to be prejudicial.").  Moreover, a jury may view the EEOC as having expertise in matters of employment discrimination.  As a result, the jury may be unduly influenced by the EEOC Determination or simply defer to it.  And, it would unnecessarily prolong the trial to explain to the jury the role and functions of the EEOC.

Price argues that the EEOC Determination "will only serve to add weight to Mr. Price's claims, not wholly establish the claims."  ECF 90 at 4.  However, as in *Goldberg*, the EEOC Determination in this case is not particularly probative.  It devotes only a few sentences to its analysis of Mr. Price's claims, and fails to describe the evidence on which it relied to support its conclusion.  As a result, there is no way to verify that, in reaching its conclusions, the EEOC considered all of the evidence.

I conclude that whether Mr. Price was subjected to racial discrimination or a hostile work environment "is best determined through the witnesses' testimony at trial," *Roberts*, 95-0059-H, 1997 WL 38138, at *2, and other evidence.  Therefore, I shall grant the Department's Motion to exclude the EEOC Determination (ECF 88, ¶ 1).

**B. Alleged Racist Comments**

The Department seeks to exclude racist comments allegedly made by the Department's

personnel. In particular, it seeks to exclude, ECF 88, ¶ 2-5:

> 2. Any evidence regarding Robert Sharp's alleged use of the word "nigger" in declining to count Mr. Price's vote;
>
> 3. Any evidence regarding Robert Sharp's alleged use of the phrase "black ass" in reference to Mr. Price's driving a fire truck;
>
> 4. Any evidence regarding Keith Thomas's alleged use of the word "nigger" in discussing Mr. Price's turnout gear;
>
> 5. Any evidence regarding Steve McCombs and/or Robert Sharp's use of the word "boogie" in referring to Mr. Price;

GVFD maintains that these "stray remarks" should be excluded because they were made

"by non-decisionmakers"; are "highly prejudicial"; and are not relevant. ECF 88-1 at 5-10.

Plaintiff disagrees. *See* ECF 90 at 7-10.

Given the posture of the case, I cannot determine, as a matter of fact or law, whether the

persons who allegedly made the disputed remarks were decision-makers or otherwise principally

responsible for any adverse employment action. I shall assume, *arguendo*, that Robert Sharp,

Steve McCombs, and Keith Thomas were "high ranking individuals," as plaintiff claims. ECF

90 at 6. The proof must await the trial.

Derogatory racial remarks and slurs can be indicative of discrimination. *See Reeves v.*

*Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000); *Price Waterhouse v. Hopkins*, 490

U.S. 228, 277 (1989); *Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429, 1434 (4th Cir. 1985).

Nevertheless, "such statements [are] probative evidence only when they directly relate to a

particular person, employment decision, or pattern of decisionmaking." *Henson v. Liggett*

*Group, Inc.*, 61 F.3d 270, 276 (4th Cir. 1995) (citations omitted).

In any event, plaintiff does not assert only a Title VII race discrimination claim.  He also asserts a hostile work environment claim.

A violation of Title VII occurs when an employee's "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted).  To make that showing, a worker must demonstrate that "the environment would reasonably be perceived, and is perceived, as hostile or abusive," even if it is not actually "psychologically injurious."  *Id.* at 22.  The "objective severity of harassment" is determined "from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances."  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (internal quotation marks omitted).

I reviewed earlier the elements of a claim for hostile work environment.  I now elaborate on the third element.  In *Boyer-Liberto*, 786 F.3d at 277, the Fourth Circuit said:

> Element three of a hostile work environment claim requires a showing that "the environment would reasonably be perceived, and is perceived, as hostile or abusive"; the plaintiff may, but is not required to, establish that the environment is "psychologically injurious." *See Harris*, 510 U.S. at 22.  Whether the environment is objectively hostile or abusive is "judged from the perspective of a reasonable person in the plaintiff's position." *Oncale* [*v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998).]  That determination is made "by looking at all the circumstances," which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. 367.

*See also*, *e.g*, *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998); *Pryor v. United Airlines, Inc.*, 791 F.3d 488, 496 (4th Cir. 2015).

In *Boyer-Liberto*, 786 F.3d at 278 (citation omitted), the Court also reiterated:  "In measuring the severity of harassing conduct, the status of the harasser may be a significant factor—e.g., a supervisor's use of [a racial epithet] impacts the work environment far more

severely than use by co-equals." *See also*, *e.g.*, *E.E.O.C. v. Fairbrook Medical Clinic, P.A.*, 609

F.3d 320, 329 (4th Cir. 2010) ("When evaluating the context in which harassment takes place,

we have often focused on the 'disparity in power between the harasser and the victim.'")

(quoting *Ziskie v. Mineta*, 547 F.3d 220, 227 (4th Cir. 2008)).   The *Boyer-Liberto* Court also

recognized that "viable hostile work environment claims often involve repeated conduct."   786

F.3d at 277; *see Nat'l R. R. Passenger Corp*, 536 U.S. at 115-17.

To be sure, the severity of unwelcome conduct "is not, and by its nature cannot be, a

mathematically precise test."   *Harris*, 510 U.S. at 22; *see Boyer-Liberto*, 786 F.3d at 277.

"[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not

amount to discriminatory changes in the terms and conditions of employment."   *Faragher*, 524

U.S. at 778 (internal quotation marks and citations omitted).   But, "an 'isolated incident[]' of

harassment can 'amount to discriminatory changes in the terms and conditions of employment,'

if that incident is 'extremely serious.'"   *Boyer-Liberto*, 786 F.3d at 277 (alterations in original)

(quoting *Faragher*, 524 U.S. at 788).

The Department also claims that Mr. Thomas's alleged use of the word "nigger" in

discussion of Mr. Price's turnout gear "must be excluded on a hearsay basis."   ECF 88-1 at 8; *see*

*also* Fed. R. Evid. 801(c) (defining hearsay as "a statement other than one made by the declarant

while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

asserted.").   The Department contends: "In support of Mr. Price's] claim that direct evidence of

discrimination exists, Mr. Price [ ] relies on an allegation that Mr. Keith Thomas, another

member of the [Department], told another person (who has yet to be identified) that 'we put that

nigger's gear in a locker and that's where it's going to stay.'"   ECF 88-1 at 8 (citation omitted).

The Department argues that this evidence is inadmissible hearsay because "Mr. Price has never

been able to identify the 'state employee' whom he alleges provided him this information," and because he "presumably intends to offer this statement to prove that it is true that Mr. Thomas moved his gear because Mr. Price is African-American." *Id.* at 9.

Mr. Price counters that Mr. Thomas's comments should not be excluded on a hearsay basis because the comments fall within the scope of Fed. R. Evid. 801(d)(2)(D). That rule provides that a statement is not hearsay if the statement "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." ECF 90 at 10.

The evidence proffered by plaintiff indicates that Mr. Thomas was working for the Department when he allegedly used the word "Nigger." ECF 90 at 10 (citing ECF 90-3, Thomas Depo. Trans. at 17:4-19:1.). And, plaintiff asserts that the moving of protective gear was within the "scope of [Mr.] Thomas'[s] agency, especially given his role as Captain of the Quartermaster, and admitted personal involvement moving protective gear." *Id.* (citing ECF 90-3, Thomas Depo. Trans. at 18:9-26:12).

Here, the alleged racist statements are certainly relevant to plaintiff's claims. Their probative value outweighs any prejudice under Rule 403. Accordingly, assuming the authorized status of the speakers, I shall deny the Department's Motion to exclude evidence of alleged racist language (ECF 88, ¶¶ 2-5).

### C. Prior Bad Acts

Defendants also seek to exclude, ECF 88, ¶¶ 6-7, 11-12:

6. Any evidence regarding criminal allegations against Robert Sharp;

7. Any evidence regarding criminal allegations against Steve McCombs;

*** 

11. Any evidence regarding the Charge of Discrimination filed with the EEOC by Dawn Anthony; and

12. Any evidence regarding alleged sexual harassment of females at the Grasonville VFD.

Plaintiff has clarified that he does "not intend to introduce evidence" at trial of "Assistant Fire Chief Steve McCombs['s] prior criminal acts, allegations of child abuse against President Sharp, allegations of sexual assault made by an unidentified waitress against President Sharp, and allegations that President Sharp stole money from a patient."   ECF 90 at 11 n. 2.   But, plaintiff seeks to introduce "evidence of a sexual assault committed by [Department] President Robert Sharp against [Department] Chairman of the Board Dawn Anthony, and Ms. Anthony's subsequently-filed EEOC Charge of Discrimination." *Id.* at 11.   Plaintiff also seeks to admit "evidence that a female [Department] firefighter was sexually harassed while in the [Department] Fire Station." *Id.*

In my view, evidence that President Sharp sexually assaulted Ms. Anthony is irrelevant as to Mr. Price's claim of discrimination on the basis of race.   Evidence of sexual harassment of Ms. Anthony or others is far afield from plaintiff's claim of race-based discrimination.   *See Chan v. Montgomery Cnty. Md.*, 8:12-CV-01735-AW, 2013 WL 1773574, at *4 (D. Md. Apr. 24, 2013) (noting that "evidence of discrimination against employees based on *the same protected trait* (i.e., 'me too' evidence)" "may be probative of unlawful discrimination.") (Emphasis added).   Even if relevant, however, the probative value would be outweighed by prejudice.   *See* Rule 403.

Accordingly, I will grant the Department's Motion to exclude evidence of a sexual assault allegedly committed by Sharp (ECF 88, ¶ 6); any evidence regarding criminal allegations against McCombs (ECF 88, ¶ 7); any evidence relating to Ms. Anthony's Charge of

Discrimination filed with the EEOC (ECF 88, ¶ 11); and any other evidence regarding alleged sexual misconduct by Department personnel (ECF 88, ¶ 12).

### D.  Facebook Evidence

The Department seeks to exclude evidence of social media posts, including certain photographs, claiming that they are irrelevant.  ECF 88-1 at 13.  Plaintiff seeks admission to prove his claim of hostile work environment.  ECF 90 at 12.  In his view, it is for the jury to determine what weight to assign to this evidence.  *Id.*

First, GVFD seeks to bar "[a]ny evidence regarding Steve McComb's [sic] Facebook account."  ECF 88, ¶ 8.  This request pertains to a Facebook post on McCombs's personal Facebook page, in which Mr. McCombs stated, in part:  "Wishing hand-to-hand combat was legal."  ECF 90-4, McCombs Depo. Trans. at 95:13. According to the Department, "there is simply no connection between this post and Mr. Price's allegation."  ECF 88-1 at 14.

Mr. Price "contends this message was posted after a particularly contentious GVFD meeting." ECF 90 at 13.  He also asserts: "When considered in its totality, the Facebook message is further evidence of GVFD['s]…hostile work environment."  *Id.*

GVFD points out that "[t]here has been no evidence produced to definitively indicate when Mr. McCombs made the Facebook post and thus, tie the post to a particular meeting." ECF 88-1 at 14.  Notwithstanding Mr. Price's assertion, the Facebook post is not relevant to Mr. Price's race-based discrimination claims.  Accordingly, I shall grant the Department's Motion to exclude it (ECF 88, ¶ 8).

In ECF 88, ¶¶ 9, 10, the Department seeks to exclude the following:

9. Any evidence regarding a photo of Grasonville VFD volunteers in which they are alleged to be demonstrating gang behavior;

10. Any evidence regarding a photo of naked firefighters;

The Department asserts, ECF 88-1 at 14-15:

Because of the poor quality of the copy of the [gang behavior] photograph, it
appears as though the persons in the photograph have painted their faces black.
Presenting a photograph to the jury which appears to show unidentified members
of the [department] in blackface would be terribly prejudicial to [the Department]
as the jury may unfairly assume a derogatory motive behind the picture purely
because of the quality of the copy itself.

In addition, defendant indicates that there is no information as to when the photo was

taken or the identity of all the people in it.  *Id.* at 14.  The Department also states: "Even were

this photo intended to display gang behavior (which is [sic] does not), there is simply no

connection to Mr. Price's claims, or any discriminatory behavior he alleges he experienced at the

firehouse."  ECF 88-1 at 15. As to the photo of nude firefighters, GVFD asserts similar

contentions.  The Department maintains that "the photo has no relevance to Price's claims" and

adds that "[t]he photo is actually of firefighters from Europe."  ECF 88-1 at 15.

Mr. Price counters that the photograph depicting gang behavior "is culturally insensitive

at best, and most likely a racist depiction all white firefighters mocking the gang-lifestyle often

attributed to African-American males."  ECF 90 at 13.  Regarding the photograph of naked

firefighters, Mr. Price claims that it "is harassing in nature and is highly inappropriate for the

work environment."  *Id.* at 14.

In my view, these photos are irrelevant to Mr. Price's claims.  Alternatively, under Rule

403, the probative value is outweighed by the potential for prejudice.

Accordingly, I shall grant the Department's Motion to exclude both photographs (ECF

88, ¶¶ 9, 10).

An Order follows.

Date: October 26, 2016                              /s/

                                        Ellen L. Hollander
                                        United States District Judge